437 So.2d 802 (1983)
STATE of Louisiana
v.
Stanley A. SMITH.
No. 82-KA-1513.
Supreme Court of Louisiana.
September 2, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick and John Sinquefield, Asst. Dist. Attys., for plaintiff-appellee.
Andrew J. Bennett, Jr., Moore & Walters, M. Michele Fournet, Frank J. Saia, Keith B. *803 Nordyke, Baton Rouge, for defendant-appellant.
CALOGERO, Justice.
Defendant, Stanley Smith, was convicted of first degree murder, in violation of La. R.S. 14:30, and sentenced to life imprisonment upon recommendation of the jury. On appeal defendant argues forty-six assignments of error. We find that none of the assignments present reversible merit. One argument (three assignments of error), however, requires that we remand the case to the trial court for additional proceedings.
In this opinion we will treat defendant's common assignments relative to the trial court's denial of two defense challenges for cause to prospective jurors who knew potential witnesses. We will also consider the defendant's assignments which prompt our remanding the case. The latter concern the refusal of the trial judge to order production of the juvenile records of the state's chief witness.
We find that none of the remaining assignments present reversible error, nor do any involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published, but which will comprise part of the record in this case.

FACTS
Both Stanley Smith and Beth Bourgeois were arrested in connection with the May 7, 1981, murder of Arvid Mikkelson, a Norwegian seaman. Pursuant to a plea bargain with the District Attorney's office Ms. Bourgeois agreed to testify against the defendant. In return for her testimony the charges against Ms. Bourgeois for armed robbery and first degree murder were reduced to accessory after the fact to first degree murder. In addition the prosecutor agreed to recommend that she receive no more than five years at hard labor upon entry of a guilty plea to the reduced charge and a guilty plea to one count of distribution of marijuana.[1]
At trial Ms. Bourgeois, who was the prosecution's key witness, testified as follows: On the night of May 7, 1981, she received a phone call from the defendant requesting that she meet him at a certain lounge. The defendant told her that there was a man in the bar (Mikkelson) flashing money and that he (defendant) wanted Ms. Bourgeois' assistance in coaxing the man from the bar in order to take his money. Ms. Bourgeois met the defendant at the bar. The two had agreed that she would bring the victim to the house shared by her and the defendant, and that the defendant would be waiting at the house where they would then rob the victim. Shortly after the victim arrived at the house with Ms. Bourgeois a fight initiated by the defendant ensued, resulting in the victim's death. Ms. Bourgeois testified that although she enticed the victim to the house and later aided in disposing of the body, it was the defendant who actually murdered him.

ASSIGNMENTS OF ERROR NOS. 4, 37 and 38
By these assignments the defendant challenges the trial judge's refusal to require the state to produce the juvenile records of its chief witness, his denial of defendant's request for an instanter subpoena duces tecum to obtain the juvenile records and his refusal to permit defense counsel to cross-examine the witness about her juvenile record.
Prior to the trial of this matter the defendant requested copies of the juvenile records of Beth Bourgeois. When the prosecutor responded that he did not have access to these records the trial judge ruled that the defendant was not entitled to them. During the trial the judge denied the defendant's request for an instanter subpoena duces tecum to obtain the juvenile records of Ms. Bourgeois. Defense counsel protested claiming that he wanted the records in order to probe the witness for bias. On appeal the defendant contends that the procurement of the records was essential to his constitutional right to confrontation.
*804 When a defendant moves for production of the juvenile records of a witness the trial court is called upon to determine whether the impeachment value of these adjudications is outweighed by the state's interest in maintaining the confidentiality of juvenile records. Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974); State v. Toledano, 391 So.2d 817, 820 (La.1980).
In Davis, the Supreme Court, in addressing this balance, stressed the importance of the defendant's right to confrontation and noted that a primary interest secured by it is the right of cross-examination. The Court observed that cross-examination is the chief means by which the credibility of a witness and the truth of his testimony are tested. The Court proceeded to state that:
One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. 415 U.S. at 316, 94 S.Ct. at 1110.
In Davis the Court held that on the facts of that case the state's interest in protecting the confidentiality of juvenile records was subordinate to the constitutional right of effective cross-examination for bias of an adverse witness.
Similar issues were faced by this Court in State v. Toledano, supra, and State v. Hillard, 398 So.2d 1057 (La.1981). In Toledano we stated that when the defense requests production of the juvenile's records during cross-examination of an alleged co-participant a previous juvenile adjudication may be sufficiently probative of the witness's truthfulness to require disclosure. Accordingly, we held that the trial court erred in denying the defense motion without first examining the juvenile record. State v. Toledano, supra at 820-821.
The correct procedure, as outlined in Toledano, is that upon request by defense counsel for specific relevant evidence with possible impeachment value, the trial judge must order submission of the witness' record for an in camera inspection to determine its materiality. The issue then becomes whether the witness' juvenile adjudications have such discrediting value that there is a reasonable likelihood it would affect the verdict. In that event it must be viewed as evidence favorable to the defendant. State v. Toledano, supra at 820.
In State v. Hillard, supra, the state's case depended primarily on a witness who, like Beth Bourgeois in this case, was an alleged co-participant in the crime for which the defendant was on trial. The trial court refused to allow questioning of the witness about his juvenile record during cross-examination. In remanding the case on this issue we noted that although there was independent evidence presented at trial which perhaps had damaged the witness's credibility, this reality did not alone obviate the need for an examination by the trial judge of the juvenile record of that witness. The critical question in cases involving a witness's juvenile record and the sixth amendment right to confrontation is whether the defendant will be precluded from utilizing a method of impeachment that would be effective in the circumstances of his case were the juvenile record available to defendant. State v. Hillard, supra at 1060-1061.
In the instant case the jury was exposed to some evidence which might have discredited Ms. Bourgeois' testimony. The plea bargain agreement, which tends to show that she had an interest in testifying against the defendant, was brought out at trial by the prosecutor. Additionally, defense counsel questioned Ms. Bourgeois about a previous marijuana charge and was able to point out some minor inconsistencies *805 between her testimony and prior statements. However, as we said in Hillard, although evidence revealing a particular juvenile record may not add to the impeachment which has taken place, a determination of whether it does can only be made after an examination of the juvenile record by the trial judge and preservation of it for our review. State v. Hillard, supra at 1060.
In the present case the trial court did not determine whether the co-participant witness had a record of juvenile adjudications. The prosecutor questioned the witness about her juvenile record, to which she responded that she had been in trouble once for running away from home. This limited exploration into the matter by the prosecutor is no substitute for an in camera inspection by the trial judge of the juvenile record of the co-participant whose testimony was so essential to the state's case. Thus, this matter must be remanded for submission to the trial judge of Ms. Bourgeois' record of juvenile adjudications. Upon review of the witness' juvenile record the trial judge must determine whether the admission of its contents is required for a fair determination of the defendant's guilt or innocence. Should he conclude that the evidence should have been admitted it will be necessary that he order a new trial. If, however, there are no juvenile adjudications, or if it is determined that the record is not sufficiently probative in connection with Ms. Bourgeois' veracity, then the judgment of the trial court should be reinstated, reserving to the defendant the right to appeal such ruling. State v. Hillard, supra at 1061.

ASSIGNMENTS OF ERROR NOS. 14 and 27
By these assignments the defendant contends that the trial judge erred in denying his challenges for cause of two jurors, Mr. N.P. Adams and Mr. L. Achee, who knew potential witnesses. The defendant exercised a peremptory challenge against Mr. Adams and had exhausted his remaining peremptory challenges at the time the challenge for cause as to Mr. Achee was denied by the trial judge. Thus, the defendant is properly before this Court. La.C.Cr.P. art. 800.
During voir dire examination it was discovered that prospective juror Adams worked for Dr. Guillory, the pathologist who would at trial testify concerning the autopsy report on the victim. It was also learned that prospective juror Achee knew some of the police officers who were to testify.
It is well settled that the trial judge has broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Sugar, 408 So.2d 1329 (La.1982); State v. Lewis, 391 So.2d 1156 (La.1980); State v. Drew, 360 So.2d 500 (La.1978).
During voir dire examination the court, state and defendant questioned Mr. Adams concerning his employment relationship with Dr. Guillory and how it might affect his ability to serve as an impartial juror. After carefully reviewing the record in this case we are satisfied that the testimony on voir dire, taken as a whole, was sufficient to convince the trial judge that Mr. Adams could be fair and was competent to serve as a juror. The trial judge did not err in denying defendant's challenge for cause.[2]
Likewise, we find that the voir dire examination of Mr. Achee was sufficient to establish that his acquaintance with potential law enforcement witnesses would not have interfered with his ability to serve as an impartial juror. Thus it cannot be said that the trial judge's ruling constituted an abuse of discretion and reversible error.
Assignments of error Nos. 14 and 27 are therefore without merit.
In view of our above determinations concerning Assignments of Error Nos. 4, 37 and 38, and finding no reversible merit in *806 any of defendant's other assignments, we conditionally affirm the defendant's conviction and remand the case to the trial court for further proceedings regarding Ms. Bourgeois' juvenile record.

Decree
In accordance with the foregoing the defendant's conviction is conditionally affirmed and the case is remanded to the district court for further proceedings.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED.
WATSON, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I do not believe that introduction of Ms. Bourgeois' juvenile record would create a reasonable doubt about guilt when evaluated in the context of the entire record. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Accordingly, I dissent from the remand. I would affirm the conviction and sentence.
NOTES
[1] This latter charge came about as the result of an incident unrelated to the present case.
[2] The trial judge was no doubt influenced in part in this decision by the fact that Dr. Guidry was to give testimony simply of his pathological findings.